IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Amber Carney** | * | |
| *On behalf of herself and others similarly situated* | * | |
| | * | |
| **Plaintiff** | | |
| | * | |
| v. | | Case No. 1:18-cv-00874 RDB |
| | * | |
| **Sunset Grille, LLC, et al** | | |
| | * | |
| **Defendants** | | |
| _____/ | | |

JOINT MOTION FOR APPROVAL OF
FLSA SETTLEMENT AGREEMENT

**I.        Introduction**

Plaintiffs, Amber Carney ("Carney"), Gavin Arthur ("Arthur"), Katherine Banks ("Banks"), Zach Brook ("Brook"), and Kelsie Riffey ("Riffey"), and prospective Plaintiff Courtney Swisher ("Swisher") (collectively referred to as "Plaintiffs"), together with Sunset Grille, LLC ("Sunset Grille"), George Trala ("Trala"), Michael Rabidu ("Rabidu"), and Darren Cummings ("Cummings") (collectively referred to as "Defendants"), jointly move this Court for an Order granting an approval of a Settlement Agreement reached in this Fair Labor Standards Act ("FLSA") action.[1]

**II.       Standard of Review**

Generally speaking, "[u]nder the FLSA, 'there is a judicial prohibition against the unsupervised waiver or settlement of claims.' " *Kianpour v. Restaurant Zon, Inc., et al.*, DKC

---

[1] Plaintiffs also brought supplemental claims under the Maryland Wage/Hour Law, Md. Ann. Code § 3-401 et seq. ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Ann. Code § 3-501 et seq. ("MWPCL").  There is a requirement that FLSA settlements be supervised by the Court or by the U.S. Department of Labor.  However, there is no corresponding requirement that settlements for MWHL or MWPCL claims be judicially approved.  Therefore, the focus on this Motion is on the FLSA claims brought by the Plaintiffs.

11-0802, 2011 WL 5375082, *2 (D. Md. Nov. 4, 2011) (*quoting Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007)). "Nevertheless, '[c]laims for FLSA violations can … be settled when the settlement is supervised by the [Department of Labor] or a court.' " Id. (*quoting Taylor*, 415 F.3d at 374 (alterations in original); *see also Gionfriddo et al. v. Jason Zink, LLC, et al.*, RDB 09-1733, 2011 WL 2791136, *2 (D. Md. July 15, 2011) ("Settlement agreements that resolve claims pursuant to the FLSA must receive court approval."). In general, Courts review FLSA settlements to ensure a fair and reasonable resolution of a bona fide dispute. *Duprey v. Scotts Co. LLC,* No. PWG-13-3496, 2014 WL 2174751, at *2 (D. Md. May 23, 2014).

Although the Fourth Circuit has not directly addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit" in *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *Saman v. LBDP, Inc.,* No. DKC–12–1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013) (citing *Hoffman v. First Student, Inc.,* No. WDQ–06–1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC,* 748 F.Supp.2d 471, 478 (D. Md. 2010)); *Simpson v. Pure Technologies U.S., Inc.*, 2018 WL 1851467 at * 2 (D. Md. Apr. 18, 2018). The settlement must 'reflect[ ] a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions,' which includes a finding with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement." *Duprey*, 2014 WL 2174751 at *2 (*citing Saman*, 2013 WL 2949047 at *3). *See also Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08–1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko–Me, LLC,* No. DKC–10–2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). "These factors are most likely to be satisfied where there is an 'assurance of an adversarial context' and

the employee is 'represented by an attorney who can protect [his] rights under the statute.' " *Duprey* at *2 (*citing Lynn's Food Stores,* 679 F.2d at 1354).

Additionally, "where a proposed settlement of FLSA claims includes a provision regarding attorneys' fees, the reasonableness of the award must also 'be independently assessed, regardless of whether there is any suggestion that a conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Saman*, 2013 WL 2949047, at *3 (quoting *Lane*, 2011 WL 3880427, at *3); *see also Kianpour*, 2011 WL 5375082, at *3. "In making that assessment, courts typically 'use the principles of the traditional lodestar method as a guide.'" *Lane*, 2011 WL 3880427, at *3 (citation omitted). The lodestar amount is "defined as a reasonable hourly rate multiplied by hours reasonably expended." *Riveros v. WWK Construction, Inc.*, No. PJM 15-193, 2015 WL 5897749, at *4 (D. Md. Oct. 5, 2015) (citation omitted).

### III.  Procedural and Factual Background

Within three years preceding the filing of this lawsuit, the Plaintiffs allege that they worked for Sunset Grille as non-exempt employees. Defendants admit that the Plaintiffs worked for Sunset Grille during the applicable period. Sunset Grille is a restaurant and bar in Ocean City, Maryland.

Plaintiffs allege that they often worked in excess of forty (40) hours a week but that they were regularly not paid for overtime by Defendants. They further allege that in some instances, hours worked were underreported to avoid paying overtime and to reduce wage payments. Moreover, Plaintiffs allege that they were not lawfully informed of the tip credit. *See* 29 U.S.C. § 203(m).

Defendants expressly deny the Plaintiffs' claims or that any amounts of regular wages or overtime wages are owed to the Plaintiffs. Defendants assert that the Plaintiffs were properly paid in accordance with all applicable state, federal and local laws.

After filing an Answer to this lawsuit, the parties expressed a desire to potentially negotiate a settlement amenable to both sides. To facilitate that goal, Defendants produced to Plaintiffs relevant wage and hour documents. Defendants' production included available work and hour records, payment records, and audits of their time records.

Using these documents, as well as Plaintiffs' own recollections about hours worked, Plaintiffs, through their counsel, were able to roughly calculate what they allege to be the potential damages of each of the Plaintiffs. The amounts calculated by Plaintiffs are as follows:

    a.     Amber Carney was owed $4,758.29.

    b.     Gavin Arthur was owed $1,208.73.

    c.     Katherine Banks was owed $3,614.71.

    d.     Zach Brook was owed $639.91.

    e.     Kelsie Riffey was owed $379.34.

    f.     Courtney Swisher was owed $6,785.50.

Defendants dispute all liability and do not admit that Plaintiffs' estimated hours or their damage calculations are accurate. Defendants assert that their wage and hour records are totally complete. Plaintiffs deny Defendants' claims and assert that their time records are inaccurate, thereby demonstrating a clear bona fide dispute regarding the hours that Plaintiffs worked.

After Plaintiffs issued an initial demand to Defendants, the parties exchanged their positions on the various allegations and claims made by Plaintiffs. Suffice to say, after exchanging their respective positions, both parties agreed there existed the potential for a bona-

fide dispute, in part, because of Defendants' time audit records and disputes over the hours of work recorded.

Several rounds of negotiations between the parties culminated in a resolution for $30,329.63 in damages, including liquidated damages and a service award payment, for Plaintiffs, and an additional $37,250.00 in attorneys' fees and costs, inclusive of future work that will be done by Plaintiffs' counsel, including the preparation of these settlement documents and motions.[2] *See* Exh. 3.  No Plaintiff will be charged any fee or subject to any deduction from their recovery for any fees and costs.  In total, the amount the Defendants have agreed to pay Plaintiffs is a total of $67,579.63, to be divided as described below.

Plaintiffs, by counsel, have been fully advised of the benefits and risks of the settlement, and they desire to enter into the settlement agreement.  This settlement enables all parties to avoid the unnecessary accumulation of litigation costs and attorneys' fees and furthers the interests of both sides.  The parties' settlement preserves scarce judicial resources and the settlement is the product of good-faith bargaining between the parties, with advice of experienced legal counsel.

**IV.     Settlement Amount Per Plaintiff and Explanation for Amount**

The parties have agreed to the following subdivision of the total settlement amount.  The settlement amount represents a 1.7x multiplier on the base damages, which are modified from Plaintiffs' initial calculations for base damages with certain compromises on assumptions underlying the calculations.  Specifically, the parties agreed to reduce the estimated "shaved" hours by 50% and to assume that payment of wages were made to Plaintiff Riffey for her first pay period.

---

[2]     At the time Plaintiffs' counsels' attorneys' fees and costs were settled upon, the attorneys' fees and costs were in excess of $41,000.00.

In addition to these damages, the parties have agreed to a service payment of $3,500.00 to Plaintiff Carney, who is the lead Plaintiff in this lawsuit. Plaintiff Carney played an important role by serving as the lead plaintiff who solely initiated this lawsuit. Plaintiff Carney also pressed for conditional certification status, and otherwise has devoted considerable time and labor towards serving as the lead plaintiff. The subdivision of the total settlement amount for each of the individual Plaintiffs follows (*see also* Exh. 2)[3]:

   a. Amber Carney: Amber Carney will recover a settlement amount of $7,250.60. She will also receive service payment of $3,500.00. In total, Plaintiff Carney will receive $10,750.60.

   b. Gavin Arthur: Gavin Arthur will recover a settlement amount of $2,054.84.

   c. Katherine Banks: Katherine Banks will recover a settlement amount of $6,145.01.

   d. Zach Brook: Zach Brook will recover a settlement amount of $858.76.

   e. Kelsie Riffey: Kelsie Riffey will recover a settlement amount of $353.62.

   f. Courtney Swisher: Courtney Swisher will recover a settlement amount of $10,176.80.

Pursuant to the three-part test set out in *Duprey*, this case contains FLSA issues actually in dispute. The parties have identified the following three areas they believe would have raised significant disputes in this case:

   a. *Notice of Tip Credit*: Plaintiffs claim that they were not given notice of the tip credit. Defendants maintain that Plaintiffs were informed of the tip credit requirements verbally at the time of hire.

   b. *Time Records*: Defendants produced time records for the Plaintiffs, which they

---

[3] These calculations were prepared by counsel on behalf of the Plaintiffs. In agreeing to settle this case, the Defendants do not admit to liability and do not join in the damage presentation included in this Motion.

insist are accurate and complete. Plaintiffs contended that those time records are inaccurate and that they worked hours in excess of what was recorded.

      c.     *Payment Records:* One Plaintiff contends she was not paid for her first pay period. Defendants produced documents stating a deposit was made. Plaintiffs contend this record is inaccurate.

      The amount of damages owed, if any, would have greatly varied depending upon the resolution of these issues by a jury. For example, if the jury decided both that Plaintiffs received notice of the tip credit and that Defendants' records were accurate, there would be no liability at all. If the jury decided that Defendants violated the FLSA, the jury could have awarded a significantly lesser amount if the jury believed that the Defendants' records were accurate. If the jury were to believe that the Plaintiffs worked no hours beyond what was recorded on the wage and hour documents, and Plaintiff Riffey was properly paid, damage awards for all six Plaintiffs could be as low as $13,511.87, plus the potential for statutory penalties. If the jury, however, believed that Plaintiffs worked beyond their stated hours, the range of damages could begin at $17,386.48 and rise to as high as $52,159.43, including liquidated and treble damages. So, the parties have largely compromised on the amount of "shaved" hours, i.e., the time that Plaintiffs allege were not compensated within their paychecks.

      Due to this varied range of recoveries, the associated potential exposure, and to avoid the costs and inherent delays in litigation, the Parties have mutually agreed to settle the case. The current settlement of $30,329.63 contemplates the payment of monies to the Plaintiffs in amounts materially similar to the liquidated damages alleged by Plaintiffs and is also materially greater than the base damages alleged by Plaintiffs with all disputed matters in their favor. In this case, the Plaintiffs are recovering what they allege are owed to them, along with a substantial amount

of monies alleged as liquidated damages. The calculations of Plaintiffs' damages were performed in an adversarial context. Accordingly, there is evidence of the reasonableness of this settlement, which has been negotiated at arms-length.

## V.     Participation of Courtney Swisher

All Plaintiffs except Courtney Swisher have filed opt-in notices pursuant to the collective action procedures of the FLSA and thus are participating as Plaintiffs in this lawsuit. Swisher submitted a late opt-in notice to Plaintiffs' counsel and has not yet been added as a participant in this action, although the parties agreed to include her in the settlement. In order to facilitate the settlement of her claims, Defendants consent to filing of a late opt-in notice for Swisher. (Exh. 5). Accordingly, the parties request that Swisher be added as a participant in this action and that the Court approve the settlement of her claims together with the other Plaintiffs.

## VI.    Continuing Jurisdiction

The parties have agreed to request that the Court maintain continuing jurisdiction over this case to supervise the settlement payments. This provision fulfills the Court's proper supervisory role in assuring that no FLSA case is dismissed absent fair and reasonable wage payment to plaintiff workers. The parties bring to the Court the following paragraph set forth in the Settlement Agreement:

> **16.     CONTINUING JURISDICTION.** The Parties agree, and the Court by its approval of this Agreement agrees, that the Court shall have continuing jurisdiction to enforce the terms of this Agreement, resolve any disputes arising out of the Agreement, and supervise all payments by the Defendants of all consideration to the Plaintiffs and Plaintiffs' counsel. Within fifteen (15) days after the last payment made to Plaintiffs and Plaintiffs' counsel by Defendants, the Parties agree to file a Notice of Stipulated Dismissal with the Court, dismissing this Lawsuit against the Defendants with prejudice. The Parties further agree to execute and/or have executed by their respective counsel, any such additional documents as may be reasonably necessary to effectuate the dismissal with prejudice of this Lawsuit against the Defendants.
>
> By approving this Settlement Agreement, the Court is agreeing to maintain continuing

jurisdiction over this case, and once final payment is made, counsel will so notify the Court and the case shall be dismissed with prejudice.  (Appropriate language is set forth in the proposed Order attached hereto to this Motion).

## VII.    Negotiated Attorneys' Fees and Costs

Under the Settlement Agreement, Plaintiffs' counsel would receive $37,250.00 for Attorneys' Fees and Costs incurred.  *See* Exh. 1; Exh. 3.  Both parties submit that attorneys' fees and costs were negotiated separately and only after a resolution was reached with respect to the Plaintiffs' settlement outcomes.  Given the full and uncompromised relief to the Plaintiffs as to their respective minimum wage and overtime claims, and the fact that fees and costs were negotiated separately and secondarily to the Plaintiffs' personal outcome, judicial scrutiny of the amount of fees and costs to be paid is likewise not necessary.[4]

Nevertheless, to the extent that the Court desires to carefully review the proposed fee and cost award for reasonableness, Plaintiffs' counsel submit Declarations together with a detailed billing statement.  *See* Exh. 3 (Counsel Affidavits and Fee Records).  As detailed in the billing statement submitted by Hoffman Employment Law, LLC, Howard Hoffman, Esq. claims an hourly rate of $400.00,[5] and has worked 45.9 hours.  *See* Exh. 3;  Exh. 3-A.  Jordan S. Liew, Esq.

---

[4]    If a motion demonstrates that a proposed fee award was agreed upon separately and without regard to the amount paid to the Plaintiffs, then unless there is reason to believe that the Plaintiff's recovery was somehow adversely affected by the amount of fees to be paid to the attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to Plaintiffs' counsel. *Kianpour*, 2011 WL 5375082 at *3 (citation omitted) (quotation omitted); see also *Phelps v. Detail USA, Inc.*, 2012 WL 254113, at *2 (M.D. Fla. Jan. 19, 2012) ("[W]hen attorney's fees are negotiated separately from payment to plaintiff(s), 'an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents.'") (citation omitted).

[5]    Mr. Hoffman has over 19 years of relevant legal experience.  The requested hourly rate – $400 an hour – fall within the range specified by Appendix B of the Local Rules for the United States District Court for the District of Maryland and was awarded to Hoffman in *Jackson et al. v. Egira, LLC, et al.*, RDB 14-3114, 2016 WL 5815850 (D. Md. Oct. 5, 2016), where the Court overruled objections to the claimed hourly rate of $400.  Specifically, L.R. Appendix B provides that an attorney who has been admitted to the bar between fifteen and nineteen years may reasonably charge an hourly rate between $275

claims an hourly rate of $205.00, and has worked 141.5 hours. *See* Exh. 4; Exh. 3-A. Gregory B. Herbers, Esq. claims an hourly rate of $205.00, and has worked 8 hours. *See* Exh. 3; Exh. 3-A.

In addition to the above, costs in this case amount to a total of $1,372.25. *See* Exh. 3; Exh. 3-A. As such, the total amount of attorneys' fees and expenses incurred by Plaintiffs' counsel in this litigation as of May 10, 2019 is approximately $49,232.75 ($47,860.00 in fees and $1,372.25 in expenses). (This will increase as counsel has continuing obligations in this case through the date of dismissal). In light of these figures, the amount of attorneys' fees and costs that Plaintiff's counsel would receive under the Agreement is reasonable under the lodestar evaluation, and in fact represents a substantial reduction and compromise in the amount of attorneys' fees and costs claimed by counsel (a discount of $11,982.25 to be precise).

**VIII.   Conclusion**

Wherefore, the parties request that this Court approve the proposed Settlement Agreement as a fair and reasonable resolution of the parties' FLSA dispute and approve and issue the proposed Order implementing the terms of the Settlement Agreement.

Respectfully submitted,


_____/s/_____         _/s/_____
Howard B. Hoffman, Esq. #25965            Donald E. English, Esq. #27534 (signed by
Jordan S. Liew, Esq. #20509               Jordan Liew with permission from Donald E.
Hoffman Employment Law, LLC               English, *et al.*)
600 Jefferson Plaza, Ste. 204             Charles J. Kresslein #22967
Rockville, Maryland 20852                 Jackson Lewis P.C.
301-251-3752                              2800 Quarry Lake Drive, Ste. 200

---

and $425. Jordan S. Liew and Gregory B. Herbers, both younger yet accomplished lawyers, have an hourly rate of $205/hour, which is well within range provided by L.R. Appendix B for similar lawyers ($150-$225).

| | |
|---|---|
| 301-251-3753 (fax)<br>hhoffman@hoholaw.com<br>jliew@hoholaw.com<br><br>*Attorneys for Plaintiffs* | Baltimore, Maryland 21209<br>410-415-2000 (Phone)<br>410-415-2001 (Fax)<br>Donald.English@jacksonlewis.com<br>Charles.Kresslein@jacksonlewis.com<br><br>*Attorneys for Defendants* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of May 2019, a copy of the foregoing Joint Motion for Approval of FLSA Settlement Agreement, along with all Exhibits and other attachments, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

_____/s/_____
Jordan S. Liew